**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A1864. MORROW et al. v. ANGKAWIJANA, LLC et al.

MᴄMɪʟʟɪᴀɴ, Judge.

Laura Morrow, as surviving spouse of Brandon T. Morrow, deceased, and Richard B. Russell, Jr., as administrator of the estate of Brandon T. Morrow (collectively referred to as the "Morrows"), appeal the trial court's grant of summary judgment in favor of Angkawijana, LLC, IMAEX Trading Company, and The Russell Corporate Groups, Inc. ("RCG"), in their suit arising out of a two-car collision that resulted in the death of Brandon T. Morrow. The Morrows also appeal the trial court's order granting RCG's motion to dismiss their claims as barred by the applicable statute of limitations. We affirm for the reasons set forth below.

"On appeal from the grant or denial of a motion for summary judgment, we apply a de novo standard of review, viewing the evidence and all reasonable inferences and conclusions drawn from it in the light most favorable to the nonmoving parties." (Citation and punctuation omitted.) *Myers v. First Citizens Bank & Trust Co., Inc.*, 324 Ga. App. 293, 294 (750 SE2d 378) (2013). So viewed, the record shows that Brandon Morrow was killed on June 20, 2007, when the car in which he was riding collided with another vehicle (the "Accident"). Brandon Morrow's co-worker Martin Dean Williams was driving, and the two were headed to lunch with another co-worker, Arthur Collins. Brandon Morrow was sitting in the backseat, and Collins was riding in the front passenger seat. After leaving their workplace, Williams made a left from Crestridge Court onto Crestridge Drive in Suwanee, Georgia (the "Intersection"). As Williams made the turn, his car was struck by an automobile driven by Ivan Basilio Crisan, who was traveling on Crestridge Drive toward the Intersection. Shortly after the collision, Williams reported a "blind spot when pulling onto Crestridge Drive," and later explained that the curve of the roadway and shrubbery at the Intersection (the "Shrubbery") obscured his view.

At the time of the Accident, Angkawijana owned the property at 65 Crestridge Drive (the "Property"), which sits at the southeastern corner of the Intersection and

2

contains the Shrubbery. IMAEX has leased the Property from Angkawijana since its purchase in 2001, and IMAEX hired RCG to maintain the Property's landscaping. RCG's duties at the time of the Accident included cutting the grass, "do[ing] the hedging," blowing leaves, cutting back bushes, laying pine straw and aerating the ground.

The Morrows filed suit on June 11, 2009, asserting negligence claims against both drivers and further asserting claims of negligence per se against Angkawijana and IMAEX in connection with the maintenance of the Shrubbery at the time of the Accident. The Morrows asserted that the two companies were negligent in installing and maintaining the Shrubbery, which the Morrows alleged obstructed the view of Crestview Drive for drivers on Crestridge Court in violation of OCGA § 32-6-51 (b) (3). On June 29, 2010, over one year after filing suit and over three years after the Accident, the Morrows filed a motion to add RCG as a defendant. The trial court granted the order on August 23, 2010, but the Morrows waited until November 3, 2010, to file an amended complaint adding RCG as a party and asserting that it was negligent in performing its duties with regard to the Shrubbery.

1. Angkawijana, IMAEX, and RCG subsequently filed the motions for summary judgment that are the subject of this appeal. The Morrows argue that the

3

trial court erred in granting the motions because they assert that the ruling is in direct contravention of the decision of the Supreme Court of Georgia in *Fortner v. Town of Register*, 278 Ga. 625 (604 SE2d 175) (2004).

The Morrows based their negligence claims against Angkawijana, IMAEX, and RCG on an alleged violation of OCGA § 32-6-51 (b) (3), which provides in relevant part that:

> [i]t shall be unlawful for any person to erect, place, or maintain in a place or position visible from any public road any unauthorized sign, signal, device, or other structure which: . . . [o]bstructs a clear view from any public road to any other portion of such public road, to intersecting or adjoining public roads, or to property abutting such public road in such a manner as to constitute a hazard to traffic on such roads.

And "[w]here vegetation is purposely planted, whether for landscaping or some other function, it may constitute a 'structure' as used in statutory language." *Fortner*, 278 Ga. at 627 (2). See also *Rachels v. Thompson*, 290 Ga. App. 115, 117 (658 SE2d 890) (2008). In the *Fortner* case, the Supreme Court determined that under OCGA § 32-6-51 (b) (3), "the maintenance of such an obstruction constitutes negligence when it creates a traffic hazard *and* is unauthorized." (Emphasis supplied.) *Fortner*, 278 Ga. at 627-628 (2). Thus, to establish their claims against Angkawijana, IMAEX, and

4

RCG, the Morrows had the burden of showing *both* that the Shrubbery created a hazard and that it was placed or maintained at the Intersection without authorization. See also *Howard v. Gourmet Concepts Intl., Inc.*, 242 Ga. App. 521, 522 (1) (529 SE2d 406) (2000) ("To recover at trial, plaintiff must show that the objects on private property adjacent to the right-of-way were unauthorized."). The Supreme Court construed "the term 'unauthorized,' as used in OCGA § 32-6-51 (b), to include not only the placement or maintenance of structures which are prohibited by some statute, code or local ordinance, but also those that lack any governmental authorization." *Fortner*, 278 Ga. 628 (2).

The motions for summary judgment asserted, inter alia, that the Morrows failed to present evidence to support their claim that the Shrubbery lacked the requisite authorization. It is axiomatic that

> a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

In response to RCG's motion for summary judgment, the Morrows argued that "governmental authorization or lack thereof, is not a prerequisite for liability under this statute"; in other words, the Morrows asserted that they were only required to show that a hazard existed. But in response to the summary judgment motion of Angkawijana and IMAEX, the Morrows apparently conceded that they had the burden to show that the Shrubbery was governmentally unauthorized and argued that "[m]aintenance of the shrubbery so as to constitute a traffic hazard is not authorized." More specifically, they argued that the Shrubbery in this case was unauthorized because it obstructed the line of sight (the "sight line") from Crestridge Court onto Crestridge Drive at the Intersection in violation of the Gwinnett County Development Regulations, which they asserted allows landscaping in private developments only if sight distances as required by the regulations are preserved.[1]

---

[1] In the Morrows' response to the Statement of Theory of Recovery filed by Angkawijana and IMAEX, they summarized their argument, as follows, "The landscaping at the intersection of Crestridge Drive and Crestridge Court is unauthorized since it obstructs the sight line at the intersection."

6

The trial court held two hearings on the summary judgment motions. At the first hearing, the trial court asked the Morrows' counsel to identify the evidence they had on the issue of authorization, and the counsel responded the shrubbery was unauthorized "if it impairs the sight line," and no second level of unauthorization is required. At the second hearing, the Morrows' counsel stated that they believed that "the question of unauthorized is inapplicable, but even if it is applicable, we filed a Gwinnett County regulation that said that you can maintain shrubbery as long as provided sight distance required by these regulations are preserved."[2]

The trial court ultimately found that the Morrows failed to establish a jury question on the issue of whether the Shrubbery lacked governmental authorization. We agree, but not for the reasons cited by the trial court.

Although the Morrows' arguments below shifted slightly with each iteration, they may be summarized as follows: 1) proof of unauthorization is not an element of their claim; 2) even if it is an element, the Shrubbery was unauthorized simply

[2] To the extent that the Morrows attempt to assert any other basis on appeal to support their claim that the Shrubbery was unauthorized, we will not consider it. It is well settled appellate courts "will not consider new arguments in opposition to a motion for summary judgment raised for the first time on appeal." *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 798 (2), n. 3 (697 SE2d 888) (2010). See also *Pfeiffer v. Ga. Dept of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002).

because it blocked the sight lines; and 3) in any event, this obstruction violated the Gwinnett County regulations. As discussed above, however, the *Fortner* decision clearly holds that proof of governmental unauthorization is an element of a claim under OCGA § 32-6-51 (b). Further, in that opinion, the Supreme Court expressly approved this Court's holding in *Town of Register v. Fortner*, 262 Ga. App. 507 (586 SE2d 54) (2003), that "a railroad right-of-way . . . constitutes private property and, thus, an obstruction thereon is not per se unauthorized." *Fortner*, 278 Ga. at 628 (2). Therefore, a plaintiff seeking relief under OCGA § 32-6-51 (b) against a private landowner must prove something more than that a structure created an obstruction of the sight line,[3] and the Morrows' argument that the Shrubbery was unauthorized simply because it blocked the sight lines is without merit.

---

[3] This Court's initial opinion in *Town of Register* addressed only the issue of whether the structure violated a statute, rule, or regulation, and not any other basis for a lack of authorization. 262 Ga. App. at 508 (1). The Supreme Court's majority opinion reversed, holding that the element of unauthorization was not limited to a violation of a statute, rule, or regulation, but was broad enough to encompass any other lack of governmental authorization. *Fortner*, 278 Ga. at 628 (2). And on remand, this Court did not re-visit the claim under OCGA § 32-6-51 (b), but rather addressed Fortner's common-law claims. *Town of Register v. Fortner*, 274 Ga. App. 586 (618 SE2d 26) (2005). Thus, it is unclear what other evidence existed in the record on the lack of authorization.

The only other basis the Morrows asserted below to support their claim that the Shrubbery was unauthorized was their contention that it obstructed the sight line in violation of the Gwinnett County regulations.[4] However, we are unable to review the merits of the Morrows' arguments in this regard because they have failed to prove the Gwinnett County regulations upon which they rely to support their claim. The Morrows fail to cite us to any certified copy in the record of the Gwinnett County regulations, and we have found none.[5] "It is well established by numerous decisions of this court that judicial notice can not be taken by the superior court or [the appellate courts] of city or county ordinances, but they must be alleged and proved."

[4] The Morrows' counsel also argued below, without citation, that the defendants, and not the Morrows, had the burden of showing that a governmental entity actually authorized the Shrubbery. Although proof of a lack of authorization could require proof of a negative, thus potentially shifting the burden of proof in some cases to the defendant, the Morrows chose to base their claim of unauthorization on an affirmative violation of a county regulation. Thus, they retained the burden of proof on that element. See generally *Mayo v. Owen*, 208 Ga. 483, 487 (2) (67 SE2d 709) (1951) (shifting burden to prove a negative to defendant who had primary control over the proof). See also OCGA § 24-4-1 under the prior evidence code (currently codified at OCGA § 24-14-1).

[5] We note that "[i]t is not the function of this Court to cull the record[, in this case, a 19-volume, 5,000-page record,] on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Citation and punctuation omitted.) *Guilford v. Marriott Intl., Inc.*, 296 Ga. App. 503, 504 (675 SE2d 247) (2009).

(Citation and punctuation omitted.) *Thorsen v. Saber*, 288 Ga. 18, 19 (1) (701 SE2d 133) (2010). See also *Childers v. Richmond County,* 266 Ga. 276, 277 (467 SE2d 176) (1996). And "[t]he proper method of proving a [county regulation] is by production of the original or of a properly certified copy. The record contains neither the original nor a properly certified copy of the [county-promulgated] document which purportedly contains the provisions which [the Morrows seek] to enforce judicially." (Citation and punctuation omitted.) *Thorsen*, 288 Ga. at 19 (1). See also former OCGA § 24-7-22 (allowing judicial notice and self-authentication of properly certified county record).[6]

Moreover, the Morrows neither alleged a violation of the Gwinnett County regulations in the Complaint, nor do they cite us to any stipulation from counsel

---

[6] Georgia's former Evidence Code applies to the motions for summary judgment in this case as they were made, and the hearing on them commenced, before January 1, 2013, even though the trial court issued its orders after that date. See Ga. L. 2011, pp. 99, 214 § 101 (providing that the new Evidence Code "shall apply to any motion made or hearing or trial commenced on or after [January 1, 2013]"). In any event, the result would be the same under OCGA § 24-2-221 of the new Evidence Code, which tracks the language of OCGA § 24-7-22, with the exception that it cites to provisions in the new Evidence Code in place of the former code provisions and it expressly provides that judicial notice may be taken of a "*certified* copy" of an ordinance or resolution. (Emphasis supplied.) See also *Sweeney v. Lowe*, __ Ga. App. __ (Case No. A13A2291, decided March 3, 2014) (holding that it would have been error for trial court to have considered municipal ordinance where no certified copy appeared in the record under OCGA §24-2-221).

regarding these regulations. Accordingly, this is not a case where the county regulations "are set forth verbatim in the pleadings or an uncertified copy is attached to the complaint and the defendant admits the ordinance or regulations in the answer. . . . " (Citation and punctuation omitted.) *Prime Home Properties, LLC v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 700 (1) (660 SE2d 44) (2008).[7]

To the contrary, the record clearly shows that the parties never agreed about the applicable sight line for the Intersection. For example, RCG's counsel stated at the first summary judgment hearing that the Gwinnett County regulations provided for a 350-foot sight line,[8] but the Morrows' attorney disputed that the applicable sight line was 350 feet and instead asserted it "should be" 390 feet as required in the

---

[7] Additionally, the Morrows' assertion that Angkawijana, IMAEX, and RCG admitted that the Shrubbery lacked authorization is without merit. The portions of the record the Morrows cite do not support such an assertion. To the contrary, these defendants consistently have maintained that the Morrows have failed to present evidence creating an issue of fact as to the element of unauthorization.

[8] Although Angkawijana, IMAEX, and RCG referenced the Gwinnett County regulations in their briefing and argument, these references do not amount to evidence of the content of those regulations or a stipulation of the actual standards. See *Latimore v. City of Atlanta*, 289 Ga. App. 85, 87 (656 SE2d 222) (2008) ("[A]ssertions of fact contained in the briefs of the parties do not, standing alone, constitute competent evidence for the resolution of a summary judgment issue.") (citation and punctuation omitted); *Flippen Alliance for Community Empowerment, Inc. v. Brannan*, 267 Ga. App. 134, 136 (1) (601 SE2d 106) (2004) ("It is axiomatic that statements in briefs are not evidence.") (citation and punctuation omitted).

11

American Association of State Highway and Transportation Officials[9] ("AASHTO") guidelines discussed by two of the expert witnesses. See generally *City of Macon v. Smith*, 117 Ga. App. 363 (160 SE2d 622) (1968) (limiting stipulation to matters regarding which parties agreed where plaintiff failed to prove municipal ordinance).

To the extent that the Morrows rely upon AASHTO guidelines, we find that they failed to prove either the content or applicability of any such guidelines. First, the Morrows have failed to cite to any properly authenticated copy of these guidelines in the record. See *Howell v. Willis*, 317 Ga. App. 199, 205 (729 SE2d 643) (2012) (expert testimony insufficient to establish the contents of a particular code or standard unless copies are made part of the record); *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 581 (2) (b) (521 SE2d 600) (1999) ("The general rule [is] that safety codes or rules promulgated by government departments or voluntary associations for their informative value do not have the force of law" and such standards *"are not admissible without expert testimony to identify, authenticate, and explain them")* (citation omitted).[10]

---

[9] We are assuming that references by the Morrows to AASHTO relate to this organization, although it is never defined in the Morrows' briefing.

[10] See generally OCGA §§ 24-9-901 and 24-9-902 (addressing authentication of documents under Georgia's new Evidence Code).

12

Second, we agree with the trial court that the Morrows failed to establish the applicability of any AASHTO guidelines to this case. The Morrows neither alleged nor proved that the applicable Gwinnett County regulations adopted sight lines as set forth in any AASHTO guidelines, nor did the Morrows establish that the AASHTO guidelines, which one expert described as "the book that . . . all states use to design roads," otherwise had any application to the Intersection in this case. No evidence exists that the State built the Intersection; to the contrary, the record suggests that the Intersection was constructed as part of a private development. The Morrows also failed to establish any other basis for the guidelines to apply to the privately-owned Property in this case. See *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 325 (617 SE2d 606) (2005) (physical precedent only) (disregarding AASHTO guidelines in absence of evidence that such guidelines specifically referenced the construction of residential parking lots at issue in case). Accordingly, without the requisite proof of the pertinent portions of the Gwinnett County Development Regulations or the AASHTO guidelines, we are unable to consider them or any testimony as to their contents. See *Martin v. Johnson-Lemon*, 271 Ga. 120, 122 (516 SE2d 66) (1999) (affirming trial court's exclusion of and decision not to consider content of county

13

regulations or expert testimony regarding such regulations, where plaintiff failed to properly prove the regulations).

We conclude, therefore, that once Angkawijana, IMAEX, and RCG pointed to a lack of evidence showing that the Shrubbery was unauthorized, the burden shifted to the Morrows to come forward with evidence showing that it lacked governmental authorization. The Morrows chose to assert that the Shrubbery violated county regulations and/or AASHTO guidelines, and because they failed to prove those regulations or guidelines, they failed to establish that any issue of fact exists with regard to an essential element of their claim under OCGA § 32-6-51 (b) (3).

The Georgia Supreme Court has held that "[e]ach party has a duty to present his best case on a motion for summary judgment." *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002). Thus, the Court "has specifically held that, in responding to a motion for summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case." (Citation and punctuation omitted.) Id. Here, the Morrows failed to present evidence in support of their claims of a violation of OCGA § 32-6-51 (b) (3), and the trial court properly granted the motions of Angkawijana, IMAEX, and RCG for summary judgment. See *HWA Properties, Inc.*

14

*v. Community & Southern Bank*, 322 Ga. App. 877, 885, n. 12 (746 SE2d 609) (2013) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed.") (citation and punctuation omitted).[11]

2. The Morrows also appeal the trial court's grant of RCG's motion to dismiss on statute of limitation grounds, but given our holding in Division 1 above, we need not reach this argument.[12]

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

---

[11] The Morrows properly note that the Supreme Court held in *Fortner* that OCGA § 32-6-51 (b) (3) did not preempt the common law, and thus "[t]o the extent that the common law imposed the duty to prevent vegetation from obstructing vision at a railroad crossing, that duty remains in effect." 278 Ga. at 627 (1). The same would be true to the extent that the common law imposed the duty to prevent vegetation from obstructing a clear view from any public road to an intersecting road. But the Morrows failed to articulate any such common law claim in the trial court below. Although the Morrows attempt to articulate a basis for such a claim in the appellate briefing , we cannot consider it for the first time on appeal. *Pfeiffer*, 275 Ga. at 828 (2); *Craig*, 304 Ga. App. at 798 (2), n. 3. Accordingly, we expressly do not reach the issue of whether a claim of common law negligence could exist under the facts of this case.

[12] The Morrows further appealed the trial court's order granting summary judgment to Weeks Realty Services, Inc., Duke-Weeks Realty Services, LLC, and Weeks Horizon Corporation. But the Morrows reached a settlement with these parties and filed a motion to dismiss them from the appeal, which this Court granted on June 25, 2013. Accordingly, we are not required to address the Morrows' third enumeration.